LORSCH & Co. *v.* UNITED STATES (No. 2536).   UNITED STATES *v.* LORSCH & Co. (No. 2540) [1]

1. CONSTRUCTION, PARAGRAPHS 1410, 1411, AND 1429, TARIFF ACT OF 1922—BUTTONS.

The provisions of paragraphs 1410 and 1411, Tariff Act of 1922, for buttons, cover dress buttons; and the provision of the jewelry material paragraph (1429) for "imitation jet buttons, cut, polished or faceted" covers the kind of button so known to the *jewelry* trade at the time of the passage of the act.

---

[1] T. D. 41036.

2. CONSTRUCTION, PARAGRAPH 1460, TARIFF ACT OF 1922—HIGHEST RATE RULE.

The provision of paragraph 1460, Tariff Act of 1922, that, "If two or more rates of duty shall be applicable to any imported article, it shall pay duty at the highest of such rates," applies only where such rates are *equally* applicable.

3. CONSTRUCTION, PARAGRAPHS 1429 AND 218, TARIFF ACT OF 1922—RELATIVE SPECIFICITY.

The provision of paragraph 1429, Tariff Act of 1922, for "imitation semiprecious stones, faceted," is more specific than that of paragraph 218, for "all articles of every description not specially provided for, composed wholly or in chief value of glass or paste, * * * colored, cut." ·

4. IMITATION JET JEWELRY MATERIAL.

Button-shaped imitation jet, faceted articles, to be used in the manufacture of jewelry, are classifiable under paragraph 1429, Tariff Act of 1922, as "imitation jet buttons, cut, polished, or faceted," rather than under paragraph 218 as colored glass articles. Globular faceted articles for the same use, imitating a semiprecious stone known as black onyx, are dutiable under paragraph 1429 as "imitation semiprecious stones, faceted," rather than under paragraph 218 as colored glass articles. They are not classifiable as glass manufactures under paragraph 230.

United States Court of Customs Appeals, June 29, 1925

APPEALS from Board of United States General Appraisers, G. A. 8915 (T. D. 40609)

[Modified.]

*William W. Hoppin,* Assistant Attorney General (*Frederick J. Carter* and *John A. Kemp,* special attorneys, of counsel), for the United States. .
*Comstock & Washburn* (*Geo. J. Puckhafer* of counsel) contra.

[Oral argument May 20, 1925 by Mr. Carter and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

These two cases are cross appeals. Certain merchandise represented by Exhibits 1, 2, 3, 4, 5, 6, and 7, which exhibits are before us, was assessed for duty by the collector at 60 per centum ad valorem, under paragraph 1429, Tariff Act of 1922, as imitation jet buttons. The importers protested the classification, claiming the merchandise to be dutiable at 45 per centum ad valorem under paragraph 1411 as buttons, or under paragraph 218 at 50 per centum ad valorem, or under the same paragraph at 55 per centum ad valorem, or at 20 per centum ad valorem under paragraph 1429, as imitation semiprecious stones, faceted, or under paragraph 230 at 50 per centum ad valorem as manufactures of glass or paste.

The Board of General Appraisers sustained the protests as to the merchandise represented by Exhibits 2, 4, and 7 and overruled them as to Exhibits 3, 5, and 6, which action, as to Exhibits 3, 5, and 6, the

importers in their brief concede to be correct. At the hearing the importers abandoned their protest as it related to Exhibit 1. It remains for this court to determine the correctness of the action of the Board of General Appraisers in sustaining the protest directed to the collector's assessment as imitation jet buttons of Exhibits 2, 4, and 7.

Exhibit 2 consists of two samples, which resemble two small buttons of black faceted glass, without shanks, but having holes bored in the middle of the under sides of the articles. This hole, into which is cemented a "peg" in making jewelry, extends about half through the article. The under side, in which the hole appears, is not faceted and is comparatively smooth. The upper, or convex side is faceted. Exhibit 4 consists of four samples and may be described in the same language as Exhibit 2, with the exception that they are larger. Exhibit 7 is a globular faceted article of black polished glass and is pierced with a hole on one side about one-eighth of an inch deep.

It is the contention of the Government that Exhibits 2 and 4 were correctly assessed by the collector and were erroneously held by the board to be classifiable under paragraph 218 at 55 per centum ad valorem, and that Exhibit 7, not being a button and having been classified under paragraph 218, its classification should not be disturbed.

The chief question in the case, as applicable to Exhibits 2 and 4 is, are they imitation jet buttons within the meaning of paragraph 1429? There seems to be no dispute that Exhibits 2, 4, and 7 imitate jet and that they also imitate black onyx; and black onyx is conceded to be a semiprecious stone. We think the testimony overwhelmingly sustains the contention, and the board so found, that in the trade there were known two types of buttons, viz, the dress button and the jewelry button. The weight of the evidence, we think, supports the contention that on September 21, 1922, the date of the passage of the Tariff Act of 1922, the merchandise represented by Exhibits 2 and 4 was known to the jewelry trade as imitation jet buttons. We think the evidence sufficiently shows a commercial meaning different from the common meaning.

Imitation jet buttons is a new phrase in tariff legislation, and Congress has made use of this phrase, for the first time in the paragraph devoted to stones, imitation stones, imitation half pearls, and other jewelry material.

The board erroneously decided that "imitation jet buttons" means imitation jet dress buttons, which have some suitable arrangement for sewing them on or fastening them to the garment. They so hold, notwithstanding the following definite conclusion reached:

The weight of the evidence indicates there are two types of button known to the trade, viz, the dress button and the jewelry button; that Exhibits 2 and 4

·are in the latter class; that the trade understanding of a jewelry button "is an article with a hole in the back," and it must in some way simulate a button;
\* \* \*

Paragraph 1429 reads as follows:

Diamonds and other precious stones, rough or uncut, and not advanced in condition or value from their natural state by cleaving, splitting, cutting, or other process, whether in their natural form or broken, any of the foregoing not set, and diamond dust, 10 per centum ad valorem; pearls and parts thereof, drilled or undrilled, but not set or strung, 20 per centum ad valorem; diamonds, coral, rubies, cameos, and other precious stones and semiprecious stones, cut but not set, and suitable for use in the manufacture of jewelry, 20 per centum ad valorem; imitation precious stones, cut or faceted, *imitation semiprecious stones, faceted,* imitation half pearls and hollow or filled pearls of all shapes, without hole or with hole partly through only, 20 per centum ad valorem; imitation precious stones, not cut or faceted, imitation semiprecious stones, not faceted, *imitation jet buttons, cut, polished, or faceted,* and imitation solid pearls wholly or partly pierced, mounted or unmounted, 60 per centum ad valorem.   (Italics ours.)

The button paragraphs of the Tariff Act of 1922 are 1410 and 1411. It would seem that these paragraphs cover dress buttons.   It is hardly conceivable that Congress should invade these two paragraphs and take therefrom imitation jet buttons and place them in the jewelry material paragraph, even though they were cut, polished, or faceted. When Congress used the words "imitation jet buttons, cut, polished, or faceted," in the jewelry material paragraph, it had in mind placing a duty of 60 per centum ad valorem upon that kind of buttons which were known to the jewelry trade as "imitation jet buttons, cut, polished, or faceted."

That the merchandise represented by Exhibits 2 and 4 is not buttons, when the word "button" is used to represent a fastening for clothing is clear.

The dictionaries define many different kinds of buttons, including push buttons, door buttons, or buttons that fasten doors, the knob of a foil or a cannon, the buttons on a rattlesnake's tail, a small disk-like mass of metal found in the crucible after fusion, a disk removed from a plate by a punch, the head of an immature mushroom, and the first outward growth of a stag's horns.   The word is derived from the old French adjective *boton* which was later modified to *bouton* and was used to describe the shape of an object.   It is defined generally in the New English Dictionary to be "a small knob or stud attached to any object for use or ornament."   All these meanings of the word "button" are presumed to have been within the understanding of Congress at the time of the passage of the act, which no doubt fortified them in the belief that there was a button uniformly and generally known to the jewelry trade as an imitation jet button which does not possess all the characteristics of the dress button.

With reference to Exhibit 7, the proof shows that this article is used in making hatpins.   While the collector found it was an imita-

tion jet button, and there is some proof to support the finding, the Government seems to concede that it is not button shape and, therefore, not a button, and evidences a willingness to acquiesce in the board's ruling that it is an article composed wholly or in chief value of glass or paste.

The board holds the merchandise represented by Exhibit 7 classifiable either as an imitation semiprecious stone, faceted, at 20 per centum ad valorem, under paragraph 1429, or under the fourth clause of paragraph 218 for articles composed in chief value of paste, at 55 per centum ad valorem. They then state:

As there are two rates of duty applicable to the same merchandise, we are required by law to assess the higher rate. (See par. 1460, Tariff Act of 1922.)

We therefore hold that the items represented by Exhibits * * * 7 are properly dutiable at the higher of the two rates applicable thereto, viz, at 55 per centum ad valorem under paragraph 218.

We must call attention to the fact that the last provision in paragraph 1460 is applied only where each of the enumerations is equally specific. *American Bead Co.* v. *United States*, 5 Ct. Cust. Appls. 459. Applying that test to the question at hand, it seems admissible of no dispute that "imitation semiprecious stones, faceted," is a more specific provision than "all articles of every description not specially provided for, composed wholly or in chief value of glass or paste, * * * colored, cut."

As the record stands, we must hold that Exhibit 7 should have been classified under the fourth clause of paragraph 1429 as "imitation semiprecious stones, faceted," at 20 per centum ad valorem.

The judgment of the board as to all parts of the importation except those represented by Exhibits 2, 4, and 7 is affirmed; and, as respects the merchandise represented by Exhibits 2, 4, and 7, the judgment of the board is reversed and the cause is remanded for action conforming to the views herein expressed.

*Modified.*